UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARCAUREL A. PIERRE,

     Plaintiff,

v.                                                    Case No. 3:20cv4786-LC-HTC

WARDEN J KOLODZEIJ, et al,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's amended complaint, alleging various unrelated incidents involving failure to protect from another inmate, excessive use of force, and deliberate indifference to medical needs. ECF Doc. 9. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). Upon screening the amended complaint under 28 U.S.C. § 1915(e)(2), and for the reasons set forth herein, the undersigned respectfully recommends that this action be dismissed.

## I. BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently incarcerated at Century Correctional Institution ("Century CI"). ECF Doc.

9 at 2.  On or about March 12, 2020, Plaintiff, proceeding *pro se*, initiated this action by filing a complaint seeking to assert claims under 42 U.S.C. § 1983 against nine (9) defendants:  FDOC Secretary Inch; Century CI Warden Kolodzeij; Century CI officers: Smith, Bass, Raught, Mozingo, Igo; Century CI Classification; and Century CI Medical Office and Staff.  ECF Doc. 1.

The undersigned reviewed the complaint and identified several deficiencies. Namely, Plaintiff included several unrelated events in his complaint occurring at various times and involving various people.  For example, although the complaint starts with an assault by a cellmate occurring in March 2018, it continues with the following: an excessive force claim against officers occurring in July 2018; complaints about a lack of response from the Inspector General to Plaintiff's request for a transfer to another institution and for protective management since July 2018; a denial of medical care claim relating to the March 2018 incident; a denial of medical records claim from January 2019; a harassment claim from March 2019; and a failure to provide a bottom bunk after a July 2017 surgery.  *Id.*

Because Plaintiff is proceeding *pro se*, the undersigned provided Plaintiff an opportunity to cure his deficiencies in an amended complaint.  ECF Doc. 8.  Among other instructions, in the undersigned's amend order, the Court specifically instructed Plaintiff as follows: he cannot join unrelated claims in a single action; he must specify which facts relate to which defendants and cannot simply group the

defendants together; he must allege facts of wrongdoing as to each defendant named, or omit them from his amended complaint; a § 1983 claim cannot seek a release from custody as relief; he cannot recover monetary damages against the named defendants in their official capacity; Century CI Classification and Century CI Medical Office and Staff are not "persons" under § 1983; and he failed to set forth facts supporting a claim of supervisory liability against the Warden, Inch, or the Inspector General.[1] ECF Doc. 8.

On or about May 4, 2020, Plaintiff filed an amended complaint. ECF Doc. 9. As in his initial complaint, Plaintiff sues Secretary Inch, Century CI Warden Kolodzeij, and Century CI officers: Smith, Bass, Raught, Mozingo and Igo. Additionally, Plaintiff sues Dr. Witten and ARNP Szalal and this time specifically names Inspector Fernandez in the "Defendant(s)" section and case style. Plaintiff, however, omitted the Century CI Classification and Century CI Medical Office and Staff as defendants. The amended complaint continues to include allegations about the same unrelated events that were discussed in the initial complaint, but this time with less supporting facts. The allegations from the amended complaint are set forth below:

---

[1] Although Plaintiff did not name Inspector Fernandez in the "Defendant(s)" section or case style, he included in the body of his complaint an allegation that the Inspector, along with Inch, is liable for "negligence, breach of contract, obstruction of justice, misfeasance." ECF Doc 1 at 9.

Page 4 of 24

First, Plaintiff alleges that on June 11 (he does not specify the year), Sgt. Smith used chemical agents against him and slammed him to the floor, hurting the back of his head. He claims to have been denied medical care despite calling out to the camera in the dorm. Plaintiff does not set forth any other facts relating to his incident.

As an initial matter, although the undersigned could read the initial complaint and the amended complaint together to see if the combined allegations are sufficient to state a claim for excessive force, the undersigned notes that this alleged excessive use of force incident may or may not be the same as the one Plaintiff describes in his initial complaint. Even though both involve Smith, in his initial complaint Plaintiff alleges that Smith and Igo sprayed him with chemical agents on July 6, 2018. Indeed, to further conflate matters, later in Plaintiff's amended complaint, he refers to an excessive use of force incident by Defendants Raught and Mozingo, which allegedly occurred on July 6, 2018. Plaintiff, however, provides no other facts about that incident.

Plaintiff next claims in his amended complaint that C.S.O. Bass failed to protect him by placing him in a cell where he was assaulted by his cellmate who pulled him off the top bunk, slammed him to the floor, and beat him relentlessly, which caused "'severe and more' injuries to Pierre's head, eyes, back, leg." ECF Doc. 9 at 5. In the same paragraph, he states, "I Pierre again claim on March 16,

2018, that the classification here at Century CI failed to protect him by placing him in a cell with a much larger cellmate [who] was serving life without possibility of parole. While I'm . . . in the last 5 years of my sentence." *Id.*

Because the initial complaint sheds additional light on these allegations, the undersigned will read the complaints together. In doing so, it appears that the assault described by Plaintiff in his initial complaint at the hands of inmate Book, which he alleges occurred on March 16, 2018, is the same one referenced in this paragraph of the amended complaint. While Plaintiff states in both complaints that the injuries were "severe" and identifies the parts of his body that were injured, he does not describe the injuries, does not state whether Bass knew placing Plaintiff with Book would result in a serious risk of harm to Plaintiff or how he would have such knowledge, does not identify the classification members responsible for his placement, or state what Bass should have done or could have done to protect him.

Pierre then alleges that he was denied medical care to treat his "injuries on March 16, 2018 from the excessive use of force by two guards" as well as injuries from the attack by his cellmate. *Id.* at 6. This statement, however, does not make sense as the only incident occurring on March 16 is the attack by inmate Book and not any excessive force incident. Regardless, Plaintiff does not identify who denied him medical treatment or how he was denied medical treatment. Reading his allegations liberally and turning back to the initial complaint, the Court concludes

that he merely alleges that he was denied "examinations to his leg where a huge mass has been . . . since the original assault," (ECF Doc. 1 at 8).

Pierre then jumps to an allegation that "from July 2018 to February 2020, [he] was also den[ied] medical care. That result[ed] in [his] injuries." *Id.* He does not identify who denied him medical care, what care was needed, or even what care was denied. Pierre also alleges, without giving a date, specifics or even a report number, that he was "'harass' and use of excessive force and false disciplinary report by Igo for filing grievances." ECF Doc. 9 at 6 (grammar left as in the original). Pierre alleges that the Warden knew "about the harassment, use of excessive force, and the false disciplinary reports by the guards written on me. And the assault[] on me by my cell mate," and that the Warden and Bass failed to protect plaintiff by putting him into protective management "from March 16, 2018 onward." *Id.* at 7.

Pierre next states, "Also, I'm add[ing] the names of S. Witten (M.D.) of Century CI and the ARNP-BC1 Ms. Szalal for den[ying] me medical care on March 16, 2018 for injuries to my head, eyes, back, hands and leg." *Id.* at 7. Once again, he does not identify what care was needed, what his injuries were, or how he was denied treatment.

In his "Statement of Claims," Plaintiff asserts that his Eighth Amendment rights were violated "by all defendants," because they failed to treat him for his injuries from the March 16, 2018 incident. ECF Doc. 9 at 8. He also alleges that

"excessive use of force" has been used on him "over and over again by the Sgt's, Capt, Co-officers here at Century CI, for filing grievances." *Id.* at 8-9. He claims his due process rights under the Fourteenth Amendment have been denied, and that Corizon (although not a named defendant) has violated his Eighth Amendment right against cruel and unusual treatment." *Id.* at 9.

Although not included in his statement of facts, Plaintiff alleges "negligence misfeasance" for not giving him a bottom bunk for his back from a July 2017 surgery. It is unclear who denied him the bottom bunk, why it was necessary, or what injuries resulted from the lack of a bottom bunk. He also claims that the Warden engaged in "active misrepresentation, cruel and unusual punishment and breach of care, custody and control agreement" by not actively protecting him. *Id.* Finally, he claims that Inspector Fernandez and Inch committed the same acts by not responding to his grievances or status request.

As relief, Plaintiff seeks "punitive and monetary damage in the amount of $400,000 USD." *Id.* at 8. Thus, unlike his initial complaint, Plaintiff no longer seeks to be released.

## II.     STANDARD OF REVIEW UNDER 28 U.S.C. §§ 1915A AND 1915(e)

Because Plaintiff is a prisoner and is also proceeding *in forma pauperis,* the Court is required to review his complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or

fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). Also, the Court must read Plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III.  DISCUSSION

As the recitation of facts set forth above should indicate, Plaintiff's amended complaint is woefully deficient. Even when read liberally, read in his favor, and read with the additional allegations in his initial complaint, the amended complaint simply does not meet the basic notice requirements as set forth in Federal Rule of Civil Procedure 8. Despite being given an opportunity to clarify his allegations in an amended complaint, Plaintiff provides no facts which could support a claim against the Defendants.

Moreover, Plaintiff failed to comply with this Court's prior order explaining that he cannot join unrelated claims in a single complaint and that he must state facts as to each defendant against whom he seeks relief. Thus, for the reasons set forth below, the undersigned recommends this action be dismissed without prejudice but, also, without further leave to amend.

### A.    Complaint Fails To Meet Rule 8 Pleading Requirements

To survive dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient to protect a complaint from dismissal. *Id.*; *see also* 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); that is, the claims must "cross the line from conceivable to plausible." *Id.* at 570. As the Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Plaintiff's allegations fall short of these standards in several ways. As set forth above, Plaintiff fails to provide basic "who, what, when, where, and how" facts

necessary to put any of the Defendants on notice of what is being alleged against them or to support any causes of action. Instead, Plaintiff's allegations are merely conclusory i.e., excessive force was used, medical treatment was not provided, and Defendants failed to protect him. For example, while Plaintiff asserts that Igo harassed, used excessive force on him and filed a false disciplinary report, Plaintiff provides no details, including the date or report number. Such conclusory allegations, however, are not entitled to a presumption of truth. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Cunningham v. School Board of Lake County*, 2016 WL 1755612, at \*6 (M.D. Fla. May 3, 2016) ("While this allegation is a virtual parroting of the legal standard, it provides no factual basis from which the Court can plausibly infer that the [Rule 8] standard … has been met.").

Indeed, in the undersigned's 21-page amend order, the undersigned specifically directed Plaintiff that "Plaintiff should clearly describe how each named defendant is involved in each alleged constitutional violation, alleging the claims as to each defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts." ECF Doc. 8. The undersigned also directed Plaintiff to "state what rights under the Constitution or laws of the United States have been violated, and he must provide support in the statement of facts for

the claimed violations with specificity." Despite these instructions, Plaintiff fails to

plead his claims with even the most basic level of specificity.

The Eleventh Circuit has explicitly rejected complaints, such as Plaintiff's

amended complaint, as impermissible shotgun pleading:

> We agree with the district court that Toth's amended complaint
> is an impermissible shotgun pleading. The amended complaint
> combines two of our categories of shotgun pleadings: it is "replete with
> conclusory, vague, and immaterial facts not obviously connected to any
> particular cause of action"; and it does not separate "each cause of
> action or claim for relief" into a different count. *See Weiland*, 792 F.3d
> at 1322–23. Although the amended complaint enumerates the legal
> rights of which Toth was allegedly deprived and which principles each
> defendant allegedly violated, it does not separate his claims by cause of
> action, draw any clear lines between the legal and factual bases for his
> claims, or set forth the elements of any of his claims. Given these
> numerous problems, we agree the defendants "could not reasonably be
> expected to frame a responsive pleading." *Jackson*, 898 F.3d at 1358.
> The complaint thus warrants dismissal.

*Toth v. Antonacci*, 788 F. App'x 688, 691 (11th Cir. 2019), *cert. denied*, No. 19-

7709, 2020 WL 1978972 (U.S. Apr. 27, 2020).

Additionally, in *Toth*, the Eleventh Circuit concluded that the district court

did not abuse its discretion in dismissing the amended complaint without an

additional opportunity to amend:

> We will also not give Toth another chance to amend his
> complaint. At the time the district court dismissed his amended
> complaint, Toth was on notice that his pleadings were infirm. The
> magistrate judge struck Toth's original complaint for failure to comply
> with Rules 8 and 10 but, as required under our precedent, gave Toth
> leave to replead. *See Vibe Micro*, 878 F.3d at 1295 (stating that, upon
> striking shotgun pleading, the district court must "instruct counsel to

replead the case" (quotation marks omitted)); *see also Walters v. Sec'y, Fla. Dep't of Corr.*, 743 F. App'x 401, 402 (11th Cir. 2018) (per curiam) (unpublished) (remanding case so pro se plaintiff could replead). The magistrate judge instructed Toth to "separate all claims based upon differing sets of circumstances" and "provid[e] a short and plain statement of [his] claim[s]" in an amended complaint. The magistrate judge also gave Toth a form § 1983 complaint and instructed him to use it. While Toth's amended complaint is considerably shorter than his original complaint, he did not follow any of the magistrate judge's instructions. Toth's "halfhearted[ ]" attempt to cure the defects in his original complaint is not enough to bring him into compliance with Rules 8 and 10. *See Jackson*, 898 F.3d at 1358–59. The district court did not abuse its discretion in dismissing his amended complaint.

As in *Toth,* the undersigned has given Pierre notice of the deficiencies of his original complaint and clear instructions on how to correct them, ECF Doc. 8, and Pierre's amended complaint continues to be woefully inadequate under Rule 8. Therefore, dismissal, rather than a second opportunity to amend, is appropriate.

## B.   Improper Joinder Of Unrelated Claims

Plaintiff's amended complaint should also be dismissed because it includes a host of unrelated claims. In the April 10 amend order, Pierre was instructed, that "[i]f Plaintiff files an amended complaint, he must present only one set of related claims arising out of the same occurrences. Unrelated claims must be brought in separate actions." *Id.* at 9. Moreover, the Court's instructions for filing a civil rights complaint make clear that such joining of unrelated claims is improper: "**If there are facts which are not related to this same basic incident or issue, they must be**

**addressed in a separate civil rights complaint.**" ECF Doc. 9 at 5 (emphasis in original).

Despite these clear instructions, Plaintiff's amended complaint continues to allege a variety of unrelated claims against different corrections officers, FDOC officials and medical providers, arising out of different events and occurring on different dates. Plaintiff's amended complaint (like his initial complaint) includes allegations relating to (1) a cellmate assault; (2) two (possibly three) unrelated excessive use of force incidents; (3) various failures to treat; (4) and failure to protect claims, also arising at various times. The undersigned finds that these various claims, even if they were sufficiently stated, which they are not, would not be sufficiently related under Rule 20 to permit their joinder in a single complaint. *See Smith v. Owens*, 625 F. App'x 924, 928 (11th Cir. 2015) (affirming dismissal of complaint where "Plaintiff's complaint alleged a variety of unrelated claims against different corrections officers, arising out of different events and occurring on different dates").

Moreover, the fact that the undersigned specifically instructed Plaintiff that he could not combine unrelated claims in one action, and Plaintiff ignored that instruction, makes dismissal of Pierre's complaint particularly appropriate. *See Skillern v. Georgia Dept. of Corrections Com'r*, 379 F. App'x 859, 860 (11th Cir.

2010) (affirming dismissal of *pro se* prisoner complaint for failure to correct Rule 20 deficiencies after being directed to do so by magistrate judge).

### C.    Failure To State A Claim

As stated above, Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to protect him, using excessive force, and failing to treat him.  Because Plaintiff provides only scant factual allegations to support his claims and relies primarily on conclusory allegations, even if these claims were not improperly joined, they would individually fail on their merits.

#### 1.    Failure to protect

Plaintiff alleges CSO Bass and "classification here at Century" failed to protect him from the attack by his cellmate by placing him with a cellmate who was larger than him and had a different length of sentence.  Plaintiff does not identify any classification officers other than Bass, and, as Pierre was instructed in the April 10 order, Century CI Classification is not an entity that can be sued.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Schwarz v. Pulaski State Prison*, No. 5:19-CV-72 (MTT), 2019 WL 3782819, at *3 (M.D. Ga. Aug. 12, 2019) ("Prison is not a 'person' subject to suit under 42 U.S.C. § 1983.").

Plaintiff's claim against Bass fails on the merits.  "The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates."  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th

Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (alterations and internal quotation marks omitted). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 833. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Farmer,* 511 U.S. at 834). A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell*, 748 F.3d at 1099 (emphasis omitted) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)) (internal quotation marks omitted).

To prevail on a failure-to-protect claim under § 1983, a plaintiff must show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015). "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell*, 748 F.3d at 1099 (emphasis omitted) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)) (internal quotation marks omitted). Additionally, the defendant's response, even if

inadequate, must amount to more than gross negligence.  *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013); *see also, Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983").  Moreover, there must be factual allegations showing that "the prison official [was] aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists."  *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Plaintiff's allegations, at best, are that Bass should have known of the risk of injury to him based on the difference in size and sentences between him and his cellmate.  This, allegation, however, even if true, is the type of "generalized awareness of risk" that the Eleventh Circuit has found as insufficient to satisfy the subjective awareness requirement.  *See Carter v. Galloway*, 352 F.3d at 1350; *see also, Reid v. Polk*, 2018 WL 1426428 at *9 (M.D. Fla. Mar. 22, 2018), *appeal dismissed*, No. 18-12168-D, 2019 WL 2261242 (11th Cir. Feb. 27, 2019) ("statements of generalized fear of the 'more than 140' convicted murderers and gang members housed in B dormitory who could potentially harm him because they knew about his child sexual battery conviction and had referred to him as a homo and baby raper (sic) … suggest no more than the type of generalized risk found insufficient in *Carter*.").

Instead, a plaintiff must allege that prison officials were aware of specific threats, visibly violent tendencies, mental health issues, or a violent and assaultive prison history of the perpetrator in order to impute subjective awareness of a substantial risk of harm. *See, e.g., Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016) (officials were subjectively aware of substantial risk of harm by placing plaintiff with the cellmate, a convicted murderer, as he was known to be schizophrenic and prone to impulsive, dangerous behavior, had assaulted his previous cellmate, and the cell they shared could not be directly observed). Plaintiff, however, makes no such allegations in his amended complaint. He does not allege that Bass or any of the classification team members were aware of a specific risk of harm posed to him by Book.

2.    <u>Excessive force</u>

Plaintiff references potentially three excessive use of force incidents in his complaints. However, he provides no facts to show that excessive force was used. In Eighth Amendment excessive force cases, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014), quoting *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (per curiam) (quotation

marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights).

In determining whether the force was applied maliciously and sadistically to cause harm, courts consider the following factors: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Hudson v. McMillian*, 503 U.S. 1, 10 (1992); *Fennell v. Gilstrap,* 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam). When considering these factors, the courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Fennell* 559 F.3d at 1217 (quotation marks omitted).

Plaintiff's allegations relating to the excessive use of force incidents are conclusory and fail to show that force was used for purposes other than to maintain or restore discipline. While referencing an incident involving Mozingo and Raught on July 6, 2018, Plaintiff provides no details concerning the use of force. He does not provide any facts as to what occurred, why force was used, what force was used, or how it was excessive, or how he was injured. His allegation relating to an excessive use of force incident by Smith in June is similarly deficient. An allegation

that chemical agents were used, alone, does not state a claim under the Eighth Amendment for cruel and unusual punishment. *See Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) ("[p]epper spray is an accepted non-lethal means of controlling unruly inmates"), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Scroggins v. Davis*, 346 F. App'x 504, 505 (11th Cir. 2009) (holding that "use of one burst of oleoresin capsicum (O.C.) spray against [the inmate-plaintiff after his failure to obey a direct order and engagement in a scuffle with guards] was not excessive force.").

### 3.    Deliberate indifference

Plaintiff also alleges that he was deprived of medical treatment, generally, as well as for his injuries arising from the use of force incidents and the inmate assault. As with his other allegations, Plaintiff provides no facts to support a deliberate indifference claim and fails to even identify who he believes is responsible.

A prison official violates the Eighth Amendment when the official acts with deliberate indifference to an inmate's serious medical needs, giving rise to a cause of action under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To prevail on a deliberate indifference claim, a plaintiff must show that he had an objectively serious medical need and that the defendant acted with deliberate indifference to that need. *See Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

In one place in his amended complaint, he alleges that Corizon failed to treat him, even though Corizon is not a named defendant. In another place, he states he was denied treatment from July 2018 to February 2020, but does not specify what treatment he sought, how he sought it, when he sought it, or from which individuals he sought treatment. He does not specify the nature of his injuries, what treatment was needed, when the alleged lack of treatment occurred, or how he was not treated. He also states in his amended complaint that he is naming Dr. Witten and ARNP Szalal for denying him medical treatment, but, once again, does not state what treatment he sought from them, when the treatment was sought, what injuries he had (other than they were to his "head, eyes, back, hands and legs"), or how they denied him treatment. Plaintiff's scant factual allegations simply do not show that any medical professionals at Century CI, much less Dr. Witten or Nurse Szalal, were deliberately indifferent to a medical need.

### 4.    Supervisory liability

Plaintiff has included defendants in supervisory positions in his complaint, presumably because of their roles as supervisors. However, supervisory officials, such as the Secretary, Inspector General and Warden, are not liable under § 1983 on the basis of *respondeat superior* or vicarious liability. *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994). They may be held liable under a theory of supervisory liability only if (1) the supervisor personally participates in the alleged

constitutional violation; or (2) there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

"The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003), or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights." *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).

Plaintiff alleges no facts of wrongdoing against Inspector General Fernandez and Secretary Inch. Instead, at the very end of his statement of claims he states, in conclusory fashion, that they have engaged in misfeasance and negligence for failing to respond to his requests for updates on his grievances. Plaintiff was previously

directed to omit these defendants if he could not allege facts supporting a claim against them.

Similarly, Plaintiff fails to state a claim for supervisory liability against the Warden. Although Plaintiff alleges the Warden knew about the cellmate attack, harassment, use of excessive force and the false disciplinary reports and failed to protect him "by den[ying] him protective management from March 16, 2018 onward," those allegations are merely conclusory. ECF Doc. 9 at 7. Pierre does not allege any facts showing that the Warden had a subjective awareness of any risk to Pierre before the events occurred. He also does not allege any facts showing how the Warden knew of the excessive force or false disciplinary reports. Thus, Plaintiff has not set forth any facts showing that the Warden, Inspector, or Secretary were personally involved with the excessive force, deliberate indifference, or failure to protect incidents.

Plaintiff has also not alleged any facts to support a finding of a causal connection between these officials' conduct and the alleged constitutional deprivation. First, the facts as alleged do not show a constitutional deprivation has occurred. But even more basically, Plaintiff has not alleged any custom, policy, or practice of the supervisory officials resulted in any deprivation to him or that the deprivations he alleges were the result of widespread abuse.

Also, to the extent Plaintiff seeks to hold the Warden or the Inspector General liable for their handling, or lack thereof, of his grievances, such claims fail as a matter of law. "An inmate has no constitutionally-protected liberty interest in access to prison grievance procedures." *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014) (internal marks omitted). The mishandling or denying of a grievance does not render a defendant liable for the conduct resulting in the grievance. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Lomholt v. Holder*, 287 F.3d 683, 683 (8th Cir. 2002) (holding that defendants' denial of the plaintiff's grievances did not state a substantive constitutional claim).

## IV.    CONCLUSION

As stated above, the Court detailed for Plaintiff the deficiencies in Plaintiff's complaint in its April 10, 2020 order requiring an amended complaint. Despite Plaintiff being given an opportunity to more carefully craft his complaint, Plaintiff's amended complaint is just as problematic as his first (if not more so). Plaintiff has not cured the deficiencies previously identified. Thus, the undersigned finds that a second chance to amend would be futile.

Accordingly, it is respectfully RECOMMENDED:

1.     That this case be DISMISSED WITHOUT PREJUDICE for failure to

comply with a Court order and failure to state a claim.

2.     That the clerk be directed to close the file.

At Pensacola, Florida, this 9th day of June, 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.